*MONCURE, P.,
delivered the opinion of the court. the case he proceeded: After stating
In this case, the fund in controversy was, in August, 1859, in the hands of Robert A. Lancaster and William D. Colquitt, trustees under a deed of trust to them from William H. Ellis and Thomas W. Peers and wife, bearing date the first day of November, 1853, executed to secure the payment of a large debt due by the said Ellis & Peers for the purchase of a tract of land conveyed by the said deed, which debt, or the greater part of it, was payable in many deferred installments. After satisfying the purposes of said deed of trust, it was known that there would be quite ,a large surplus of the trust fund which would be subject to the claims of other creditors, under subsequent deeds of trust or otherwise, which claims, to some extent, appeared to be doubtful and conflicting. And the said trustees, Lancaster & Colquitt, notknowingwho, certainly, was entitled to the said fund, and in what proportions; and wishing to dispose of it with safety to themselves and according to the respective rights of all persons concerned, instituted this suit (in August, 1859), for the purpose of paying the said fund into court, and convening before it all persons concerned, and having the matter settled under the direction of the court. They accordingly made all persons then known to have any claim to the said fund defendants to their suit, who were very numerous, and prayed in their bill, among other things,that an order might be made for the payment of the residue remaining in their hands as aforesaid into “one of the banks in the city of Richmond, to the credit of this cause, subject to the future order or decree of this court in the premises; that such other person or per-, sons as shall be discovered to be interested in the of the of the said fund, be *made defendants to the suit, and required to set forth their interests; that all proper enquiries and accounts shall be decreed to be made and settled; that the plaintiffs shall be protected against costs and risk in the disposition of the said fund; and that all questions arising concerning the rightful disposition of the said fund and the parties entitled thereto, be settled, and the said fund disposed of by the proper decree or order of this court in this suit, and that full and general relief in the premises be granted.”
Accordingly, on the 21st of December, 1859, on the motion of the plaintiffs, they were authorized by a decree of the court in the said suit, to denosit the said fund in the Farmers bank of Virginia to the credit of , this cause, subject to the order or decree of this court, and were required to file a certificate of such deposit with the clerk of the court.
On the 27th of December. 1859, such deposit was accordingly made, the sum deposited being $7,476.54 and a certificate of the deposit was filed in said suit.
On the 28th of January, 1860. it appearing to the court that the said sum was then on deposit in the said bank to the credit of the said cause, an order was made therein that John G. Williams (who was appointed a commissioner for the purpose) “have leave to check on said bank for said sum, and after deducting therefrom a commission of one per cent, for his services, do lend out the residue of said sum, taking from the borrower a bond with personal security, approved by one of the commissioners of this court, payable,” &c. “in a penalty,”, &c., “and conditioned to pay into this court, interest on the sum borrowed semi-annually,” &c., “and to pay the principal sum and all interest due thereon into this court, in sixty days after he shall have been served with a copy of an order or decree made herein directing the payment of the same. And *said commissioner is also directed to take a trust deed on real estate, ample in value to secure the payment of said bond, the title and sufficiency of said real estate to be approved also by one of the commissioners of this court. But said John G. Williams shall not act under this decree until he shall have entered into bond with good security,” &c.
On the 3d of March, 1860, the said commissioner Williams filed his report under said decree, to which there was no exception, on consideration whereof the same was confirmed by the court.
It is stated in said report, that the said commissioner Williams, “as directed by said decree, drew out of bank said sum of money, retained his commission, and loaned to Edward Mayo the residue, to-wit: the sum of $7,401.78, taking from him his bond with William C. Mayo as security, in the penalty of $14,803.56, conditoned as directed by the decree, with a deed of trust upon the tract of land of said Mayo in Henrico county, near Richmond, called Bellville. The security to the bond and the deed of trust have been approved of by Commissioner R. Milton Cary, the bond is herewith returned,” &c.
On the 18th day of February, 1863, the said Edward Mayo presented to the said court his petition, stating that he had borrowed the said fund on the terms aforesaid, with which he complied; and that he was then desirous to repay the said loan, and thereby discharge his surety from liability, and his real estate from encumbrance; and praying that an order be made, directing that the money due on said loan be collected and brought into court.
On the same dav, and on the petition then filed by Edward Mayo as aforesaid, it was ordered by the said court, “that he pay into the Farmers bank of Virginia to the credit of this cause the sum of $7,401.18, with ^interest from the 1st day of February, 1860, being the amount loaned to him on that day by ] ohn G. Williams acting as commissioner of the court in this cause,” &c., “and upon his filing with the clerk of this court a certificate of such deposit, it” was “further ordered that he have leave to withdraw his said bond, which is to be delivered to him bv the clerk; and that the said John G. Williams, commissioner as aforesaid, do execute to the said Mayo a release deed for the said tract of land called *366 Bellville, conveyed by the trust deed aforesaid, to be acknowledged and recorded in the clerk’s office of the county of Henrico.”
On the 3d of May, 1863, it appearing that R. Milton Carey is the trustee in the deed from Edward Mayo conveying his tract of land called Bellville in the county of Henrico, in trust to secure the sum of money loaned to him in this cause, to-wit: the sum of $7.-401.78, with interest from the first day of February, 1860, so much of the order pronounced in this cause on the 18th day of February, 1863, as directs that John G. Williams, the commissioner therein mentioned, shall execute to the said Mayo a release deed for the said tract of land,” was ordered to “be set aside; and it further appearing that the said Mayo” had “complied with the said order by paying into the Farmers bank of Virginia to the credit of this cause, said sum of money w.ith interest, as appears by the certificate of the proper officer of said bank filed in this cause, it” was “ordered that the said Cary as trustee as aforesaid, do execute to the said Mayo a release deed of the said tract of land conveyed to him in trust as aforesaid, with special warranty, to be recorded in the clerk’s office of the said county court of Henrico.”
The loan to Mayo as aforesaid, having been made in what is called good money, though not in specie, to which it may possibly have been equivalent in value, *and having been repaid in Confederate currency of the same amount, worth at the time of such repayment not more than one-fourth of the then value of the same amount of specie; and the said amount of Confederate currency having since wholly perished, and been lost to the parties entitled to the fund by reason of the fall of the Confederacy; it is contended by the appellants that the loss must fall, not on them or the said parties entitled to the fund, who; it is contended, never consented to, or acquiesced in, said repayment in Confederate currency, but must fall on said Mayo and his surety, and the tract Of land conveyed to him as aforesaid, the liability of whom and which therefor, the said appellants seek to enforce by this appeal, though the court below decided to the contrary by the decree appealed from.
It is true there is no evidence in the case to show that the parties entitled to the fund or any of them expressly assented to the repayment of the debt in Confederate currency as aforesaid. Nor is there any evidence to show that they dissented from such repayment, or that they were ignorant of the fact of such repayment at the time it was made, or evep for a reasonable period thereafter, when it might not have been too late to make any objection thereto. There was, certainly, no fraud or secrecy in making such repayment. It was openly made on petition setting out the grounds therefor. It was made on application to the circuit court and by consent of the judge thereof (Meredith). It was followed in due time by a deed of release duly executed, acknowledged, and recorded in Jhe city of Richmond, or county of Henrico, where, no doubt, the parties concerned and their counsel' resided. It is extremely improbable that the said parties and their counsel were so ignorant at the time of such repayment and so remained from and after that time during the *whole period of the war, and until the time of the filing of the cross bill in this case, in January, 1868; especially as it is not averred in that bill that they had no information on the subject, though it may be therein averred that they did not receive notice of the transaction at or about the time it occurred. The probability of the case is, that the said parties and their counsel were aware of the transaction at the time it occurred, or in a reasonable time thereafter, and early enough to make an objection to it; and that they made none because they considered the currency as good for present use as could be then obtained, and would ultimately be of the value of specie. The repayment was made when the Confederate cause was very promising, as much so, perhaps, as at any time during the war; and when Confederate currency had become almose exclusively the circulation of the State. See what is said on this subject by Nunnally and Pollard in their statements included in the record in this case.
But what seems to. be conclusive in this case against the appellants, is the fact that the whole matter was in the hands of the court, and was transacted by the court which was perfectly competent to accomplish the transaction. The money from which the subject of controversy was derived was paid into court because it was not certainly known who was entitled to it, and for the purpose of having it .ascertained by the court, who was so entitled and in what proportions; and for the purpose of having it taken care of, and made as productive as possible in the meantime. Now the court having the direct charge of the fund, and alone having such charge, it was competent for the court, and indeed for no other party, to loan out the fund, as it did to Mayo; and to receive it back whenever its repayment should be desired by Mayo or be considered proper by the court. If an executor or administrator bona fide *received Confederate money at par in payment of a debt due to his testator or intestate in good money, at a time when such money was a valuable or as current as it was when Mayo’s debt was paid, he could not be compelled to repay the amount in good money after the war was ended and all Confederate money had perished. A fortiori, the debtor bona fide making such payment, could not be compelled to repay the amount as aforesaid. If such be the law in regard to an executor or administrator a fortiori it is the law in regard to a court authorized, as in this case, to receive such payment. Here the money was paid into court because the parties supposed to be the only parties concerned did not know who was entitled to it, and it was so paid in, ex-expressly on the terms that it should be subject to the future order or decree of the court in the premises. Of course it was not necessary when the loan was first made by the court to Mayo, that the parties beneficially *367 interested, should have notice of such loan. Nor was it necessary, when Mayo applied to the court to receive the money loaned and interest due thereon, that the .parties beneficially interested should have notice of such application. The court had power by the express terms of the decree under which the deposit was made, to consent to such repayment, and Mayo cannot be liable for the payment of the money over again, in the absence of evidence of fraud on his part.
The money in this case was borrowed by Mayo of the court of chancery, in whose hands it was when loaned, and to which it was payable by the express terms of the loan. It would seem therefore, that the borrower was safe in repaying the money in such currency as the court, the lender, was willing to receive. It was uncertain at that time, who was beneficially entitled to the money, to which there were conflicting ♦claimants, and the court was considered by the borrowers as the legal representative of the party beneficially entitled, whoever he might be. The money was returned early in 1863, when Confederate_ money was almost the only currency of the country, and was generally considered, in the Confederate States, to be ultimately good. Had repayment therein been refused to be accepted by the court, Mayo might, and probably would, have so used it as to avoid any loss from its future depreciation in value and its ultimate destruction. It might have been used at its par value, in the payment of other debts, or in the purchase" of real estate or other property. Instead of affording him an opportunity of so using it, no objection was made by any person to such repayment until several years after the end of the war, and after such currency had become of no value. No doubt the parties beneficially entitled to the money were aware of its repayment in Confederate currency, at or shortly after the time of such repayment. Under all these circumstances, can the purchaser be now required to pay over again the amount of the purchase money and interest? I think not.
The following cases are cited and relied on by the appellants in their petition for an appeal in this case, viz: Bird’s committee v. Bird, 21 Gratt., 712; Berry, &c. v. Irick &c., 22 Id., 614; Campbell’s ex’or v. Campbell, Id., 649; Crickard’s ex’or v. Crickard’s legatees, 25 Id., 410; and Tosh, &c. v. Robertson, &c. 27 Id., 270. But none of these cases need be stated here in detail, as all of them differ materially from this case, in which the subject of controversy was under the special and peculiar direction and control of the court, and none of the parties are personally responsible in the absence of evidence of fraud on their part, of which evidence there is none in this case. The case of Dickinson’s *adm’r v. Helms & als., 29 Gratt. 462. in which the unanimous opinion of this court was delivered by Judge Christian, strongly sustains this case.
Upon the whole, the court is of opinion ! that there is no error in the decree appealed j from, and that the same ought to be affirmed.
Decree affirmed.